# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

INGRID JACKSON, )
)
    Plaintiff, )
)
v. )
) CV418-065
NANCY A. BERRYHILL, )
Acting Commissioner of )
Social Security, )
)
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Ingrid Jackson seeks judicial review of the Social Security Administration's denial of her application for Supplemental Security Income ("SSI") benefits.

## I.  GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.,* 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir.

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (*citing* 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2015) (footnote added).

## II.  ANALYSIS

Jackson, who was 30 years old when her claim was denied, alleges disability beginning on August 30, 2011.  Tr. 25.  She has at least a high school education, and past job experience as a cleaner and housekeeper.  Tr. 32.  After a hearing, the ALJ issued an unfavorable decision.  Tr. 25-33.  He found Jackson's lupus, IBS, colitis, depression, anxiety, and marijuana abuse severe but found that they did not meet or medically equal a Listing.  Tr. 28-29.  The ALJ thus found that Jackson retained the RFC for a full range of work, except she could have no jobs causing direct exposure to the sun, could have non-intensive interaction with the public, coworkers, and supervisors in non-confrontational situations, was best suited to a low-stress work environment without the demands of hourly production quotas, could perform short-cycle repetitive work, and should not be isolated from bathroom facilities.  Tr. 29.  Plaintiff, he determined, could perform her past relevant work as a housekeeper.  Tr. 26, 32.

Jackson disagrees,[2] arguing that the ALJ erred in failing to

---

[2] Plaintiff filed two briefs both titled "Claimant's Brief of Social Security Appeal."

consider the treating physician's statements regarding the limiting effects of Jackson's discoid lupus erythematosus ("DLE") during flare ups, or the side effects of Jackson's medications. Doc. 12. Specifically, Jackson argues that the ALJ should have considered her treating dermatologist's opinion on the periodic nature of plaintiff's lupus flare-ups. Doc. 17 at 3. Plaintiff argues that, had the ALJ properly incorporated the restrictions imposed by the flare-ups and her medication side effects into the RFC, she would have been found disabled. Docs. 12 & 17. Plaintiff notes that the medications she takes to control her lupus have significant side effects and that these side effects prohibit her from maintaining employment. Doc. 12 at 6.

## I. Limiting Effects of Jackson's Lupus

Plaintiff claims that the ALJ erred in failing to consider the limiting effects imposed by her lupus. *Id.* at 2-3. The ALJ assigned claimant's treating dermatologist's—Sidney Smith—opinions little weight. *Id.* at 4. She alleges that the ALJ erred by considering only her symptoms and ability to work during quiescent periods rather than when a lupus flare-

---

They appear to be virtually identical and the later brief does not indicate that any amendments to the intial document were made, as a result the Court cites to the earlier filed document.

up occurs and that the ALJ discounted her treating physician's reports of mental deficits. *Id.* 4-6. Likewise, she argues that the ALJ improperly credited her testimony as to her capabilities when she was not suffering from a flare-up, and failed to consider her testimony as to her limitations when she was experiencing a flare-up. *Id.* at 5.

The ALJ did not err in this case. As to Dr. Smith, the fact that the ALJ discounted a treating physician's report is not error *per se*. An ALJ may discount a treating physician's opinion if he gives good reasons for doing so. 20 C.F.R. §§ 404.1527(c)(2)-(3), 416.927(c)2)-(3); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). While a treating physician's opinion is *valuable* to the ALJ's RFC assessment, it is the ALJ's responsibility (and not any doctor's) to assess the RFC based on the record as a whole. *Robinson v. Astrue,* 365 F. App'x 993, 999 (11th Cir. 2010) ("the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors."); *see* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) (the ALJ has the responsibility for determining a claimant's

RFC). Indeed, the ALJ need not adopt every limitation assessed by a *credited* medical source, nor must his RFC assessment mirror the opinion of every doctor. *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014) (an ALJ's decision need not address every limitation included in a physician's report as long as the written decision is clear that the ALJ considered both the physician's opinion and the plaintiff's condition as a whole); 20 C.F.R. §§ 404. 1527(b), (c); 416.927(b), (c).

The ALJ properly discounted plaintiff's treating physician's statement that plaintiff suffered from moderate to severe mental deficits. Tr. 615. As an initial matter, Dr. Smith opined in October of 2015 that plaintiff could work indoors without limitation—although she was unable to work outside for any period of time. Tr. 29-30; *see* tr. 845; *see also* tr. 849 (noting plaintiff had good results while compliant with her medication). This opinion, of course, bears little resemblance to plaintiff's contention that the ALJ improperly discredited some physician-endorsed limitation about her capacity to work during a flare-up. Plaintiff's own testimony that she was able to braid hair "non-stop" for a two-week period further contradicted Dr. Smith's opinions as to her physical capacity. Tr. 32. Likewise, Dr. Smith did not make any

6

findings as to plaintiff's mental state or medication side-effects at any point of their treating relationship prior to her application for benefits. *See* tr. 484, 487, 490, 493, 497, 499, 844, 846, 849, 852, 855. Rather, his only observations regarding plaintiff's mental capacity was, as noted by the Commissioner, based entirely upon plaintiff's own (properly discredited, *see infra*) self-reports. *Crawford,* 363 F.3d at 1159 (ALJ properly discounted treating physician's opinion that was inconsistent with his own treatment notes, unsupported by the medical evidence, and appeared to be based primarily on subjective complaints). The ALJ thus discounted Dr. Smith's opinion that plaintiff had moderate-to-severe limitations in her ability to concentrate and limitations in her physical capabilities as inconsistent with the medical record. This decision was within the ability of the ALJ. *Phillips*, 357 F.3d at 1240-41; 20 C.F.R. § 416.927(c)(3)-(4); SSR 96-2p. As a result, the ALJ's determination of plaintiff's RFC was supported by substantial evidence and the Court sees no reason to disturb this determination.

The ALJ also did not err when he discounted plaintiff's self-reported limitations. Plaintiff's statements regarding her treatment compliance, activities of daily life, and drug use were — as noted by the

ALJ — repeatedly conflicting. Tr. 31 ("However, the claimant gave conflicting statements."). For example, plaintiff indicated that she saw a psychiatrist on a monthly basis and counseling on a biweekly basis, although her records indicated that she stopped receiving treatment in December of 2014. *Id.* Plaintiff also stated that she was able to go to church, shop for groceries, run errands, eat out, visit relatives and friends, take her child to the beach, and attend school activities, while claiming total inability to work. *Id.* Plaintiff also initially denied using marijuana at her hearing, but later admitted reporting to a physician that she smoked at least one joint a day. Tr. 61. Likewise, plaintiff reported being able to braid hair "for 24 hours a day for two weeks." Tr. 32. Plaintiff's inconsistent statements *are* explicit and adequate reasons for an adverse credibility finding. *See* 20 C.F.R. §§ 404.1529, 416.929(b). As a result, the ALJ did not err when he discounted these statements and no reversal is required.

## II.   Limitations of Claimant's Prescription

Plaintiff also alleges that the ALJ failed to consider the consequences of the medications she takes to combat her lupus symptoms. Doc. 12 at 5-7. She notes that the use of Thalidomide,

Plaquenil, and prednisone; which caused drowsiness, vomiting, headache, changes in vision, muscle weakness, stomach pain, mental confusion, and memory and attention dysfunction; prohibit her from maintaining an eight-hour work day. *Id.* at 6. Plaintiff argues that the ALJ should have considered the side effects of the various medications plaintiff is required to take to treat her various illnesses before formulating the RFC. *Id.*

However, plaintiff's physicians did not indicate that she experienced serious complications or side effects from these medications. Tr. 375, 397, 490, 497, 502, 521, 545, 852, 855 (no notation near box for "significant complications/side effects"). As the Commissioner noted, plaintiff also denied experiencing significant complications or side effects. Tr. 550 (October 2014 appointment where plaintiff "denied any side effects from the medications"), 560 (November 2014 appointment where "patient did not report any side effects due to [her] medications"). Plaintiff does argue that she suffered from changes in vision, although she does not indicate how that would prevent her work as a housekeeper. Doc. 12 at 6. As to the other potential side effects, she notes only that they are common—not that she actually experiences them. *Id.* Finally,

9

Dr. Smith opined that plaintiff suffers from "moderate" and "severe" side effects from her medication.  Tr. 858.  But, as discussed above, the ALJ properly discounted Dr. Smith's opinions.

"Although an ALJ is required to consider Claimant's subjective accounts of adverse effects of medication, there must be adequate documentation of the side effects in the medical evidence to warrant reversal or remand."  *Corley v. Astrue,* 2012 WL 2513509, * 4 (M.D. Ga. June 28, 2012) (unreported) (*citing Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990)).  Because the record does not indicate that plaintiff complained of side effects, and plaintiff has provided no support for her assertion that she did, [3] the Court cannot find that the ALJ's determination is unsupported by substantial evidence.  *See, Swindle,* 914 F.2d at 226 (ALJ's determination supported by substantial evidence where plaintiff "did not complain of side effects, with the exception that she felt that one medication might be giving her headaches, and the record did not disclose any concerns about side effects by the several doctors who examined and treated her").  Further, plaintiff was

---

[3]  Plaintiff failed to address the Commissioner's argument regarding the lack of support for impairments caused by her medications in her reply brief.  Doc. 17 (addressing only the question of whether the ALJ failed to consider the periodic nature of her lupus symptoms).

10

represented by counsel at her hearing. The ALJ thus had no special duty to further develop the record, as the ALJ would if she had been unrepresented. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003).

### III. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are

advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 28th day of May, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA